By the Court. Sandford, J.
We decided in Mottram v. Mills, (1 Sand. R. 37,) that the plaintiff’s full indorsement of a bill to a subsequent indorsee, remaining thereon uncancelled at the trial, is no objection to his recovery against a prior party, if he produce it as the holder. But it is said, these plaintiffs were never the proprietors of the bill; they were agents merely of J. Garruste & Co. We suppose it is of no consequence whether they held the bill as owners, or as agents. They were the holders, in either event, and entitled to recover, either for their own benefit, or that of their principal. But we think, on the evidence, they were the exclusive owners of the bill.
The defendants next contend that they were discharged from liability, by the plaintiffs’ omission to receive the sum offered by the acceptors at Havre; it being a violation of the agreement upon which the bill was returned to Prance.
It is not material, probably, whether the agreement was fully made, or whether the plaintiffs ought to have accepted the offer at Havre; because, if both points were conceded, their remedy on the bill against the defendants as drawers, was unimpaired.
But the objections are all untenable. The agreement was perfect. The qualification in the plaintiffs’ note of June 13th, was no more, than an expression of what was fairly implied in the defendants’ proposal; and if it were a new term of the contract, their silence would furnish plausible evidence of their assenting to it.
The tender or offer was defective, for two reasons:—1. It was made to a clerk of the sub-agent in Havre of the plaintiffs’ agent in Paris, to whom the bill was sent. The clerk declared that he could make no answer to the offer, and there is no ground for inferring that he had any authority to act in the premises. 2. The party tendering, required the bill to be given up, without any offer to pay the damages which the holders were entitled to *219 receive. The acceptors were not bound, (we will assume,) to pay those damages; but until they were paid, the holders were entitled to retain the bill to enforce their payment. All the acceptors would ask was, an exoneration from the bill, on paying their own liability.
The principal point in the case remains. The plaintiffs, after the bill was returned here dishonored, remitted to their correspondent at Havre to cover the same; and subsequently returned the protested bill to Paris, and there received from the acceptors, $Y,559 Y9. On this portion of the amount of the bill, it is contended they are not entitled to damages.
We are unable to perceive any good reason why they are not. The allowance of damages rests upon the theory, that the holder of the bill, by reason of its non-payment, is put to the expense of remitting the same amount to replace that expressed in the bill, in the country where it was payable. The rate of exchange measures the damages, in the absence of a statutory or customary regulation. This allowance is made without any inquiry as to the fact of a remittance to cover the amount of the protested bill. The liability to pay the damages becomes perfect, on the return of the bill protested. A subsequent part payment by the acceptor, can have no greater influence in reducing or extinguishing that liability, than a similar partial payment by the drawer or any other party. It is as fixed and determinate an obligation, as the debt represented by the sum expressed in the bill itself.
We were referred to two decisions, as supporting the defendants’ position on this subj ect. In one of them, Laing v. Barclay, 3 Stark. R. 38, the bill was drawn at Demarara on London, for £500. The case states it was protested for only £100; £400 having been paid upon it by the acceptors. The damages were limited to the £100. It is evident to us, from the report of the case, that the partial payment was made either before or at the time the bill was presented for payment; so that there was not even in theory, any re-exchange incurred by the holder in respect of the £400.
The other case cited, was The Bangor Bank v. Hook, 5 Greenl. R. 174, which was an action against the indorser of a bill, *220 drawn at Belfast, in Maine, on a party in Boston, duly accepted and protested for non-payment. The plaintiffs had sued the acceptor in Boston, and collected nearly the whole bill. In the suit against the indorser, they claimed the balance of the bill, and damages on the whole amount for which it was drawn. Weston, J., in delivering the opinion of the court, stated the ground on which damages were allowed on bills of exchange, and that the statute intended to give damages on the same principle as they were given by the common law in the cases to which that was applicable. That according to the common law principle, if the bill, after being dishonored, was paid or received at the place where it was payable, the holders’ claim for damages was reduced pro tamio; that incident which would have otherwise attached to it ceasing, because the money was paid at the place appointed. The learned judge declared that the right to receive, and the liability to pay damages, accrued on the protest of the bill. The holders could then have enforced it against the indorser: they were under no obligation to sue the acceptor, or to receive the contents of the bill without the damages; but when they did receive from the acceptor at Boston, where the bill was payable, the greater part of the bill, they were to be considered, (nothing appearing to the contrary,) as having pro tamio waived and lost their right to recover the re-exchange, or the damages substituted therefor. The court decided that the plaintiffs’ claim for damages was limited to the sum uncollected from the acceptor.
If the position of the judge as to payment of the bill by the acceptor, had been limited to a partial payment made at or before a protest of the bill, it would have been precisely the same as that ruled by Chief Justice Abbott in the nisi prius case cited from 3d Starlde. The argument in the Bangor Bank v. Hook, evidently rests upon the ground, that because the holder of a protested bill ultimately receives it, in whole or in part, at the place where it was due and payable, he is placed in the same situation as he would have been had the bill been paid when it matured. After fully considering the subject, we are satisfied that the argument is fallacious. On the protest of a bill abroad, the remitter, for tlie protection of his credit, must at once take it *221 up ; and for this purpose he must encounter the expenses of re-exchange. So the Bangor Bank in the case cited, having remitted the hill in suit to Boston to supply funds there for their business occasions; on its being protested, were doubtless compelled to remit to Boston, other funds to the same amount, to supply the deficiency made by its non-payment. How it is obvious, that the subsequent collection of the amount of the protested bill at the place where it was payable, will not make the remitter whole in the transaction, unless it shall so happen that the rate of exchange is at that time so favorable to him, that he can sell a bill drawn by him against such collection, for as much as it cost him to remit and take up the protested bill when he received notice of its dishonor—together with his expenses in the collection. Thus the result, in reference to an actual reimbursement of the remitter, or a restoration to the same state he would have been in if the bill had been paid according to its tenor and obligation, would depend upon the fluctuations of exchange, the credit of the holder as a drawer of foreign bills, the continued solvency of his agent abroad; and other considerations, which we need not enumerate. It was intended by the rule of fixed damages provided in the statute, to avoid all inquiries of this character, in every case of protested bills of exchange. And we think the good sense of the thing, whether regarded as under the statute or the law merchant, entitles the holder of a foreign bill to his damages on its non-payment, irrespective of the place where he may subsequently receive entire or partial payment of its amount. •
In the case at bar, we might reasonably hold that there is no room for inferring any waiver of damages, by the proceeding against the acceptors. The bill was sent back on a stimulation, which, fairly construed, continued the liability of the drawers for the damages to which the plaintiffs were at that time entitled.
The judgment at the special term must be affirmed.